IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MIKE'S TRAIN HOUSE, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.   L-06-960 |
| | * | |
| HARTFORD FIRE INSURANCE CO., | * | |
| | * | |
| Defendant. | * | |
| | * | |

******

## MEMORANDUM

This is an insurance coverage dispute.  Mike's Train House, Inc. ("MTH") seeks a declaratory judgment that, under the terms of its commercial general liability policy, Hartford Fire Insurance Co. ("Hartford") has a duty to defend it against a lawsuit brought by Union Pacific Railroad Company ("UP").  MTH also claims that Hartford's refusal to provide a defense to the UP lawsuit is a breach of contract and a breach of fiduciary duty.  Hartford counters that UP's claims against MTH are not covered because they fall within the scope of the policy's intellectual property exclusion.  Hartford, therefore, denies its obligation to defend MTH.

The parties have filed cross-motions for summary judgment.[1]  The issues have been fully briefed and no hearing is necessary.  See Local Rule 105.6.  This case hinges on the meaning of the term "advertising injury" as used in the insurance policies issued to MTH.  As discussed, advertising injury is

---

[1] MTH moves for summary judgment on its declaratory judgment claim (Count I) and its breach of contract claim (Count II), but not on its breach of fiduciary duty claim (Count III).  Hartford seeks summary judgment on all three of MTH's claims.

defined to exclude trademark and trade name violations. The UP Complaint alleges that MTH violated UP's trademark and trade name. These claims are, therefore, not potentially covered under the policies and Hartford has no duty to defend MTH.

The Court will, in a separate order, deny MTH's motion for summary judgment, grant Hartford's motion for summary judgment and direct the Clerk to close the case.[2]

## I. BACKGROUND

### A. The Policies

Through its store and web site, MTH sells model trains and related items. From 2002 to 2005, MTH purchased several commercial general liability policies from Hartford that included coverage for advertising offense liability (the "Policies").[3]

The Policies provide coverage for certain types of "advertising injur[ies]," but not for others.[4] Specifically, the Policies cover claims involving "[c]opying . . . a person's or organization's 'advertising idea' or style of 'advertisement'" and "[i]nfringement of copyright, slogan, or title of any literary or

---

[2] Hartford has also filed a motion to strike MTH's December 21, 2006 letter to the Court attaching the settlement agreement between UP and MTH. The Court will deny Hartford's motion to strike as moot.

[3] Advertising injury coverage is a standard feature of commercial general liability policies. Typically, this coverage insures against liability for offenses committed in the course of advertising the insured's products or services, such as misappropriation of an advertising idea or infringement of a slogan. 9A Couch on Insurance § 129:8 (3d ed. 2007).

[4] The Policies state in relevant part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal or advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal or advertising injury' to which this insurance does not apply."

artistic work, in your 'advertisement' or on your 'website'[.]"[5] The Policies do not cover, however, injuries arising out of "any violation of any intellectual property rights such as . . . trademark, trade name, trade secret, service mark or other designation of origin or authenticity." Significantly, the intellectual property exclusion does not apply to "(1) Copyright; (2) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or (3) Title of any literary or artistic work."

    B.    UP's Lawsuit

On December 30, 2005, UP filed suit against MTH in federal district court in Nebraska. See Union Pacific R.R. Co. V. Mike's Train House, Inc., No. 8:05-cv-575 (D. Neb. filed Dec. 30, 2005). In a six-count complaint (the "Complaint"), UP claimed that it "is the owner of several federally registered trademarks and service marks."[6] The Complaint alleges that MTH "has been and continues to promote, distribute, offer for sale, and sell products, including, without limitation, model trains and model railroad-related products, bearing or incorporating the Union Pacific Trademarks in this District and throughout the United States." According to the Complaint, MTH's distribution and promotion of these products is likely to "cause the public to believe that Defendant's products originate from Union Pacific . . . or are otherwise affiliated with Union Pacific."

UP asserted the following claims: (i) federal trademark infringement in violation of § 32 of the

---

[5] "Advertisement" is, in turn, defined as "widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services," but does not include "[t]he design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products."

[6] UP attached the three federal trademark registrations as exhibits to the Complaint.

Lanham Act, 15 U.S.C. § 1114; (ii) federal unfair competition and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) federal trademark dilution in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125©; (iv) common law trademark infringement; (v) unfair competition; (vi) violation of Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq*.

UP requested an injunction preventing MTH from continuing these violations and requiring MTH to deliver to UP all merchandise and promotional materials that depict any UP trademark. In addition, the Complaint sought monetary damages.

C.      MTH's Claims Against Hartford

Three days after UP served MTH with the Complaint, MTH notified Hartford of the lawsuit. Hartford declined to defend MTH on the grounds that UP's claims were not covered by the Policies. On April 4, 2006, MTH filed this action against Hartford.

MTH recognizes that trademark and trade name violations are excluded from coverage. It makes two arguments, however, that at least some of UP's claims are covered by the advertising injury provision. The first argument rests on the premise that UP's trademark and trade name are advertising ideas. MTH contends that the Complaint can be read as claiming that MTH copied UP's advertising ideas by promoting products bearing the UP logo.

MTH's second argument is more difficult to follow. MTH apparently contends that the trademark/trade name exclusion does not apply when the alleged infringement occurs within the title of a literary work. MTH sells books, including children's coloring books, that either depict the UP trademark on the cover or incorporate the words "Union Pacific" in the title. Because the Policies

Case 1:06-cv-00960-BEL   Document 30   Filed 09/11/07   Page 5 of 10


cover infringement of the title of a literary work, MTH argues that these alleged violations are covered by the Policies.

## II. ANALYSIS

### A. Legal Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).[7]

When both parties file motions for summary judgment, as here, the Court applies the same standard of review. See Northfield Ins. Co. v. Boxley, 215 F.Supp.2d 656, *657 -658 (D. Md. 2002), see also ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n.3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment."). In considering cross-motions for summary judgment, the role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the

---

[7] This case is based on diversity jurisdiction. We apply Maryland law because this action was commenced in this jurisdiction and Hartford issued the Policies to MTH in Maryland. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (holding that a federal court sitting in a diversity jurisdiction case must apply the choice-of-law principles of the State in which the federal court is located); Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993) ("[T]he law of the place where an insurance contract is written and delivered controls issues as to its coverage").

Rule 56 standard." Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co., 627 F.Supp. 170, 172 (D. Md. 1985).

  B. Hartford's Duty to Defend

  Hartford's duty to defend MTH depends on whether any of UP's claims are potentially covered by the Policies. If any claims are potentially covered, then an insurer must defend the entire suit, at least until the potentially covered claims have been disposed of. See Montgomery County Bd. of Educ. v. Horace Mann Ins. Co., 383 Md. 527, 537 (2004) ("where a duty to defend is included in a liability policy, the insurer is obligated to defend its insured when there exists a potentiality that the claim could be covered by the policy"). MTH, as the insured, has the burden of proving coverage. See Perdue Farms Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., et al., 197 F.Supp.2d 370, 376 (D. Md. 2002). Hartford, on the other hand, has the burden of proving that the Policies' exclusions are applicable. Id.

  C. The Policies' Language Precludes Coverage of UP's Claims

  In evaluating the scope and limitations of coverage, the Court engages in a two-part inquiry: (1) what is the coverage under the terms and requirements of the insurance policy? (2) do the allegations in the underlying action potentially bring the claim within the policy's coverage? Walk v. Hartford Cas. Ins. Co., 382 Md. 1, 15 (2004). To answer these questions, the Court looks first to the terms of the Policies themselves. Aetna Cas. & Surety Co. v. Cochran, 651 A.2d 859, 862 (Md. 1995) (internal quotations omitted). Like any other contract, each Policy must be construed as a whole to effectuate the parties' intentions. See Sullins v. Allstate Ins. Co., 667 A.2d 617, 619 (Md. 1995). The Policies'

words are to be given their ordinary meaning, and any ambiguity is resolved in favor of MTH.  <u>Id.</u>

As step two of the inquiry, the Policies' language must then be compared to the Complaint to determine whether the Policies afford coverage for at least one of the claims UP asserts.  <u>See</u> <u>Brohawn v. Transamerica Ins. Co.</u>, 374 A.2d 842, 850 (Md. 1995) ("The obligation of an insurer to defend its insured under a contract provision . . . is determined by the allegations in the [] actions.  If the plaintiffs . . . allege a claim covered by the policy, the insurer has a duty to defend."); <u>St. Paul Fire & Marine Ins. Co. v. Pryseski</u>, 292 Md. 187, 193 (1981) (noting that the second part of coverage analysis "focuses upon the allegations" of the lawsuit).

A review of the Policies and of the Complaint demonstrates that there is no coverage for the claims UP asserts.  The Policies cover claims alleging "[c]opying, in your 'advertisement' . . . a person's or organization's 'advertising idea' or style of 'advertisement'" and "[i]nfringement of copyright, slogan, or title of any literary or artistic work, in your 'advertisement'".  The Policies do not, however, cover claims alleging a "violation of . . . trademark . . . or other designation of origin or authenticity."

Counts I, II, and III of the Complaint allege the elements of a trademark infringement action under the Lanham Act.  <u>See</u> 15 U.S.C. §§ 1114, 1125.  Counts IV and V assert comparable common law claims for trademark infringement and unfair competition.  Count VI alleges that MTH's use of UP's trademark also constitutes a violation of Nebraska's Uniform Deceptive Trade Practices Act.  The Complaint's allegations, even liberally construed, frame claims excluded by the trademark exclusion.

This conclusion is supported by the Fourth Circuit's decision in Superformance v. Hartford Cas. Ins. Co., 332 F.3d 215, 220 (4th Cir. 2003). In Superformance, the insured contended that Hartford owed it a defense and indemnity in a trademark infringement action because the claims alleged "advertising injury." Evaluating insurance policy terms identical to those at issue here, the court held that claims including "infringement of federally registered trademarks," "federal trademark dilution," and "unfair competition" "all . . . allege various sorts of trademark violations and related unfair competition based on those violations." Id. at 222.

Nothing in the UP Complaint warrants deviating from the conclusions drawn in Superformance. As in Superformance, all of the claims at issue are "varieties of trademark claims protected by the Lanham Act and State analogues." Superformance, 332 F.3d at 223. As other courts have held, such claims are expressly excluded from coverage by the terms of the Policies.[8] See Global Computing, Inc. v. Hartford Cas. Ins. Co., 2007 WL 844618, at *4 (N.D. Ill. 2007) ("While the [Hartford trademark] exclusion is limited and does not include the advertisement of slogan, [the underlying] complaint alleges an injury resulting from the distribution of infringing products and the diminution of their marks caused by the advertising of those infringing products. Accordingly, [the complaint's] Lanham Trademark Act claim, its false designation of origin claim, and its derivative claims fall plainly within this exception.").

---

[8] MTH contends that, because UP alleges that MTH "promoted" products bearing the UP trademark, UP's claims constitute "advertising injury" as that term is defined in the Policies. As the Fourth Circuit has noted, "several courts have viewed claims for trademark infringement as *necessarily* involving an insured's advertising activities." State Auto Prop. & Cas. Ins. Co. v. Travelers Indemnity Co. of Amer., 343 F.3d 249, 259 n.14 (4th Cir. 2003). We need not decide this issue. Even assuming, *arguendo*, that UP's claims can be construed as satisfying the definition of "personal and advertising injury," they would nevertheless be subject to the trademark exclusion.

1.     UP's Claims Do Not Allege Copying of an Advertising Idea

As discussed, MTH makes two arguments that at least some of UP's claims are covered. The first argument rests on the notion that UP's trademark and trade name can be viewed as advertising ideas. Thus, UP's complaint can be construed as alleging that MTH copied a UP advertising idea by, for example, promoting products that display the distinctive Union Pacific shield, MTH contends.

This argument fails. In the first place, the UP Complaint alleges trademark and trade name violations. Nowhere does UP allege that MTH misappropriated one of its advertising ideas. Even if the Complaint included such an allegation, there would be no potential for coverage. Under the Policies, the advertising injury coverage for "copying . . . [an] organization's 'advertising idea'" is subject to the trademark exclusion.[9] The language of that exclusion governs Hartford's liability in this case.

2.     UP Does Not Allege Infringement of a Title of a Literary or Artistic Work

The second argument, that the Policies cover trademark or trade name infringement occurring within the title of a literary work, also fails.[10] The exception to the trademark exclusion applies when the insured infringes the title of a literary work. The Policies provide coverage for claims involving

---

[9] The only case MTH cites in support of the idea that an trademark can constitute an advertising idea addresses a policy that did not include a trademark exclusion. See State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Amer., 343 F.3d 249, 258 (4th Cir. 2003).

[10] As mentioned, MTH's argument is confusing. MTH may be arguing that UP's trademark and trade name can be viewed as the title of a literary work. Under such a theory, UP may be alleging that MTH misappropriated a title by advertising products bearing the UP name or logo. This argument fails. There is no support in the case law for conflating the words "title" and "trademark." Moreover, conflating the two words would read the trademark exclusion out of the Policies entirely.

"[i]nfringement of . . . title of any literary or artistic work, in your 'advertisement'; or on your 'website'[.]" The Policies define "advertisement" to mean "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services." Thus, MTH would be covered if one of its advertisements infringed, for example, the title, "Moby Dick." There is no support, however, for the strained reading that MTH gives to the exception to the trademark exclusion.[11]

For these reasons, the Court will, by separate Order, deny MTH's motion for summary judgment, grant Hartford's motion for summary judgment, and direct the Clerk to close the case.[12]

Dated this 11th day of September, 2007

/s/
Benson Everett Legg
Chief Judge

---

[11] The cases cited by MTH do not support of its arguments for coverage. In <u>Palmer v. Truck Ins. Exchange</u>, 21 Cal. 4th 1109 (1999), the court concluded that, while "name[s] of a literary or artistic work . . . can be trademarked," "the definition of 'title' cannot subsume the definitions of 'trademark,' 'service mark,' or 'trade name' . . . . Otherwise, all or part of the exclusion clause becomes meaningless." <u>Id.</u> at 1116. The same is true here.

[12] On December 21, 2006, while the parties' cross-motions for summary judgment were pending, MTH submitted a letter to the Court stating that it had settled the UP lawsuit and attaching a copy of the Settlement Agreement. The Recitals in the Settlement Agreement state that "UP filed a Complaint against MTH. . . alleging that certain of UP's trademarks, including its federally registered trademark for UNION PACIFIC for goods including model trains and literary works[.]" MTH contends that this passing reference to "literary works" demonstrates that UP's claims fall within the exception to the trademark exclusion for "title of any artistic or literary work."

This argument fails. The language of a settlement agreement between parties cannot create coverage where none exists.